IN THE SUPREME COURT OF NORTH CAROLINA

No. 444PA19-2

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

GARRY JOSEPH GUPTON

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an unpublished, unanimous decision of the Court of Appeals, No. COA23-661 (N.C. Ct. App. July 16, 2025), affirming an order entered on 5 November 2021 by Judge R. Stuart Albright in Superior Court, Guilford County, denying defendant's motion for appropriate relief. Heard in the Supreme Court on 14 April 2026.

*Jeff Jackson, Attorney General, by Teresa M. Postell, Special Deputy Attorney General, for the State-appellee.*

*Kristen L. Todd and Lauren E. Miller for defendant-appellant.*

BERGER, Justice.

Defendant was sentenced to life in prison in 2017 following his convictions for first-degree murder and first-degree arson. On direct appeal, the Court of Appeals held that no error occurred at his trial. In 2020, defendant filed a motion for appropriate relief alleging he received ineffective assistance of counsel at trial. The MAR court concluded that defendant was in a position to adequately raise his claims on direct appeal but failed to do so, and his IAC claims were, therefore, procedurally

barred pursuant to N.C.G.S. § 15A-1419. The Court of Appeals affirmed the MAR court's order, and defendant filed a petition for writ of certiorari with this Court, which was allowed. Because defendant was in a position to adequately raise his claims on direct appeal, defendant's IAC claims are procedurally barred, and we affirm the judgment of the Court of Appeals.

## I.     Factual and Procedural Background

In November 2014, defendant met Stephen White at a nightclub in Greensboro, and the pair later went to a local hotel.[1] Later that night, defendant had a confrontation with the night attendant. Shortly thereafter, smoke was seen was seen coming from defendant's room. When law enforcement and firefighters arrived on scene, defendant's room was filled with smoke. Mr. White was found in the room lying face down on the floor. His body had smoldering burns, a television was on his head, and furniture covered his upper body. Mr. White suffered extensive burn-related injuries which required multiple surgeries, including amputation of both arms. About a week after the incident, Mr. White died from complications associated with his injuries.

Authorities determined that arson was the cause of the fire in the hotel room, and defendant was indicted for first-degree murder and first-degree arson in December 2014. At trial, defense counsel advanced several affirmative defenses,

---

[1] A more detailed recitation of facts can be found in the first decision of the Court of Appeals. *See State v. Gupton* (*Gupton I*), No. COA18-818, 2019 WL 5213009 (N.C. Ct. App. Oct. 15, 2019).

including not guilty by reason of insanity. In addition, the trial court denied multiple motions to dismiss related to sufficiency of the State's evidence.

Defendant was found guilty of first-degree murder and first-degree arson, and the trial court sentenced him to life in prison for first-degree murder and a consecutive term of sixty-four to eighty-nine months in prison for first-degree arson. On direct appeal, defendant argued that: (1) the trial court erred by denying his motions to dismiss because the State failed to present sufficient evidence of arson and failed to prove that defendant was sane when he committed the murder, and (2) the short-form indictment charging him with first-degree murder was facially invalid. *State v. Gupton* (*Gupton I*), No. COA18-818, 2019 WL 5213009, at *2–4 (N.C. Ct. App. Oct. 15, 2019). The Court of Appeals rejected defendant's arguments and concluded that defendant received a fair trial free from error. *Id*. at *4.

On 30 April 2020, defendant filed an MAR, arguing his trial counsel was ineffective because counsel: (1) failed to confront the State's case against him; (2) made "highly questionable admissions of guilt" and introduced "irrelevant prejudicial evidence"; (3) presented a "legally invalid insanity defense"; and (4) focused on capital sentencing at the expense of the guilt-innocent phase. Defendant also asserted a fifth claim in his MAR, contending that he was afforded "only one trial attorney in violation of his constitutional right to two counsel" in a capital trial. Notably, none of these claims were raised on direct appeal.

In support of his MAR, defendant submitted the trial court record and

transcript and an affidavit from one of his trial attorneys, Mr. Wayne Baucino. The State filed an answer responding to defendant's MAR and attached an affidavit from defendant's other trial attorney, Mr. Ames Chamberlin.

On 5 November 2021, the MAR court concluded that defendant's claims were procedurally barred under N.C.G.S. § 15A-1419 and entered an order denying the MAR. Alternatively, the MAR court determined that defendant's claims should be denied on the merits as a matter of law based on the unambiguous record.

Defendant petitioned the Court of Appeals for a writ of certiorari to review the MAR court's order. *See State v. Gupton* (*Gupton II*), No. COA23-661, 2025 WL 1949973 (N.C. Ct. App. July 16, 2025). The Court of Appeals allowed defendant's petition, but it failed to conduct the straightforward two-step analysis required by our precedent. *Id.*; *see also Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 570 (2023) ("When contemplating whether to issue a writ of certiorari, our state's appellate courts *must* consider a two-factor test. That test examines (1) the likelihood that the case has merit or that error was committed below and (2) whether there are extraordinary circumstances that justify issuing the writ." (emphasis added)).[2] The

_____

[2] We have stressed that "a writ of certiorari should issue only if the petitioner can show merit or that error was probably committed below . . . [and] only if there are extraordinary circumstances to justify it." *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 572 (2023) (cleaned up). However, since we decided *Cryan*, panels of the Court of Appeals have continued to use that court's pre-*Cryan* opinions to "serve as guideposts to help [them] exercise [their] discretion and determine in which cases a grant of certiorari is appropriate." *State v. Gardner*, 299 N.C. App. 251, 255 (2025). *But see id.* at 264 (Freeman, J., concurring in part and dissenting in part) (explaining that the Court of Appeals "may not ignore binding Supreme Court precedent and label such conduct an exercise of its 'discretion' "). This is error,

Court of Appeals affirmed the MAR court's order, reasoning that because defendant was in an adequate position to raise these IAC claims on direct appeal but failed to do so, and because he failed to argue any exceptions to the bar provided by N.C.G.S. § 15A-1419(b), the MAR court did not err in concluding that defendant's claims were procedurally barred. *Gupton II*, 2025 WL 1949973, at *5. We allowed defendant's petition for writ of certiorari to review whether the Court of Appeals erred in affirming the order of the MAR court.

## II.    Standard of Review

This Court reviews decisions of the Court of Appeals to determine "whether the Court of Appeals committed any errors of law," and we therefore conduct "the same inquiry that the Court of Appeals was called upon to undertake in reviewing the [MAR] court's order." *Schooldev E., LLC v. Town of Wake Forest*, 386 N.C. 775, 785 (2024) (cleaned up). Accordingly, we review the MAR court's order to determine "whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order

---

and we take this opportunity to once again "remind the Court of Appeals that it is bound to apply properly the precedent of this Court." *See In re N.M.W.*, 389 N.C. 57, 57 (2026) (per curiam). While the Court of Appeals has discretion to allow or deny a petition for writ of certiorari, that court is bound by *Cryan* when exercising that discretion. *See, e.g.*, *State v. Lail*, 388 N.C. 431, 433 (2025) ("Although the abuse of discretion standard typically requires a manifestly arbitrary or unreasoned decision, . . . [a] ruling, which applie[s] the wrong legal standard, [i]s an abuse of discretion." (cleaned up)).

The apparent lack of uniform application of our precedent in this sphere is not a mere academic or technical issue. When one party's petition is assigned to a panel properly applying *Cryan*, and another party's functionally identical petition is assigned to a panel improperly applying the lower court's pre-*Cryan* cases, there is a very real possibility that those two parties will receive unequal treatment.

entered by the trial court." *State v. Tucker*, 385 N.C. 471, 484 (2023) (cleaned up). "We review issues of law," such as whether a claim is procedurally barred, "de novo." *Id.*

## III.    Discussion

### A. Motions for Appropriate Relief

Post-conviction procedures generally serve two purposes: promoting finality of criminal judgments while at the same time providing a mechanism for relief for legitimate constitutional violations, consequential legal mistakes, newly discovered evidence, ineffective assistance of counsel, sentencing errors, or other substantial defects that affected the fairness or legality of the relevant proceedings. *See* N.C.G.S. § 15A-1415 (2025). An MAR must comply with procedural requirements set forth in section 15A-1420, identify the legal basis for the relief requested, and include facts supporting a defendant's requested relief. Thereafter, an MAR court "must determine the motion without an evidentiary hearing when the motion and supporting and opposing information present only questions of law," but may conduct an evidentiary hearing if one is "required to resolve questions of fact." N.C.G.S. § 15A-1420(c)(1), (3) (2025).

Unlike a direct appeal, an MAR may, consistent with the statute, address issues outside the trial record, and therefore it functions as a broader post-conviction remedy designed to address miscarriages of justice that may not have been fully reviewable on direct appeal. *See* N.C.G.S. §§ 15A-1414 to -1416, -1419 (2025). But

our post-conviction relief statutes generally bar a defendant from raising a claim in an MAR when "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C.G.S. § 15A-1419(a)(3). In such circumstances, "[t]he court shall deny the motion . . . unless the defendant can demonstrate" either: (1) "[g]ood cause for excusing the grounds for denial . . . [and] actual prejudice resulting from the defendant's claim"; or (2) "[t]hat failure to consider the defendant's claim will result in a fundamental miscarriage of justice." N.C.G.S. § 15A-1419(b).

"Subsection 15A-1419(a)(3) is not a general rule that *any* claim not brought on direct appeal is forfeited on state collateral review but rather requires the reviewing court, instead, to determine whether the particular claim at issue *could* have been brought on direct review." *Tucker*, 385 N.C. at 491–92 (cleaned up). A claim could have been brought on direct review if "the direct appeal record . . . contained sufficient information to permit the reviewing court to make all the factual and legal determinations necessary to allow a proper resolution of the claim in question." *State v. Bell*, 387 N.C. 262, 274–75 (2025) (cleaned up). Put simply, to avoid this procedural bar, defendants must simply "raise those . . . claims on direct appeal that are apparent from the record." *State v. Fair*, 354 N.C. 131, 167 (2001).

> The post-conviction procedure set forth above serves a critical role in our criminal justice system. Not only does it provide for review and potential relief to defendants convicted of crime, but the process also promotes finality. *See* N.C.G.S. § 15A-1415, Official Commentary (2021) ("[A]dditional finality has been added in G.S. 15A-1419 by

making it clear that there is but one choice to raise available matters after the case is over, and if there has been a previous assertion of the error, or opportunity to assert the error, by motion or appeal, a later motion may be denied on that basis."); *see also* N.C.G.S. § 15A-1419, Official Commentary (2021) ("[O]nce . . . there has been opportunity to litigate a matter, there will not be a right to seek relief by additional motions at a later date. . . . [I]f there has been an opportunity to have the matter considered on a previous motion for appropriate relief or appeal the court may deny the motion for appropriate relief.").

It is imperative, not only for the parties, but also for federal habeas review, that we strictly and regularly follow our post-conviction procedural requirements.

*Tucker*, 385 N.C. at 486 (alterations in original).

Whether a claim is apparent from the record and therefore subject to the procedural bar necessarily depends on the type of claim asserted. For some types of claims, the presence in the record of defense counsel's objection and the trial court's ruling on said objection is sufficient to place a defendant in a position to adequately raise that claim on direct appeal. *See id.* at 492 (concluding the defendant was in a position to adequately raise a *Batson* claim on direct appeal where the record demonstrated defense counsel "raised a *Batson* objection at trial, [and] receiv[ed] a ruling from the judge"). For other claims, like IAC claims, the inquiry is more nuanced.

## B. Ineffective Assistance of Counsel Claims

All defendants in criminal proceedings possess a constitutional right to the effective assistance of counsel. *See State v. Oglesby*, 382 N.C. 235, 242 (2022). To

prevail on an IAC claim, a defendant must demonstrate both that counsel's performance was deficient and that this deficient performance was prejudicial. *Id.* To satisfy the first prong, a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984). A defendant satisfies the second prong when he or she proves "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Because a defendant must demonstrate both deficient performance and prejudice to prevail, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in . . . order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Because the "object of an ineffectiveness claim is not to grade counsel's performance," a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* When "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," the Supreme Court of the United States has instructed "that course should be followed." *Id.*

Regarding when such claims can be decided by an appellate court, we have stated that "IAC claims brought on direct review will be decided on the merits when

the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *Fair*, 354 N.C. at 166. However, "because of the nature of IAC claims, defendants will likely not be in a position to develop many IAC claims on direct appeal." *Id.* at 167. As it "is not the intention of this Court to deprive criminal defendants of their right to have IAC claims fully considered," when an IAC claim is asserted on direct appeal with an undeveloped record, our appellate courts generally "dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding." *Id.*

"Nonetheless, to avoid procedural default under N.C.G.S. § 15A-1419(a)(3), defendants should necessarily *raise* those IAC claims on direct appeal that are apparent from the record." *Id.* (emphasis added); *see also Oglesby*, 382 N.C. at 245 ("[A]n appellate court's decision to deny or dismiss an IAC claim depends in part on that court's confidence in the record produced during the underlying proceeding."). Put another way, defendants must raise record-apparent IAC claims on direct appeal or the procedural bar applies.[3]

---

[3] There is no lack of clarity here contrary to the assertions in the dissent. N.C.G.S. § 15A-1419(a)(3) sets forth the procedural requirements, and *Fair*, *Oglesby*, and *State v. Long*, 354 N.C. 534 (2001), clarified whatever the statute left open. We agree with our colleagues that there is no blanket forfeiture rule for all IAC claims: those not apparent from the record need not be brought on direct appeal. *See* N.C.G.S. § 15A-1419(a)(3). But the dissent conflates "apparent from the record" with the ability to decide an IAC claim.

The question is whether a particular claim could have been brought on direct review. When an IAC claim is apparent from the record, it must be raised on direct appeal or else it is subject to the procedural bar. This is essentially a preservation requirement as illustrated

The United States Court of Appeals for the Fourth Circuit examined the interplay between IAC claims and subsection 15A-1419(a)(3) in *McCarver v. Lee*, 221 F.3d 583 (4th Cir. 2000), which this Court has cited with approval. *See Fair*, 354 N.C. at 166. In *McCarver*, the defendant argued that "because [IAC] claims are ordinarily more appropriately raised in collateral proceedings, these claims are not consistently procedurally barred in collateral proceedings in North Carolina." *McCarver*, 221 F.3d at 589. But the Fourth Circuit properly understood that for the defendant there to prevail in his argument, "he would need to cite a non-negligible number of cases in which [IAC] claims could have been brought on direct review but were not, and in which the collateral review court nonetheless failed to bar the claim . . . because the claim was an [IAC] claim." *Id.* The defendant in *McCarver* could not make such a showing because "North Carolina courts have held that [IAC] claims that are not brought on direct review can be procedurally defaulted," and the Fourth Circuit rejected the defendant's assertion "that there is a general ineffective assistance of counsel claim exception to our holding that section 15A-1419(a)(3) is an independent and adequate state procedural bar." *Id.* at 589–90.

---

in *Fair*. If the IAC claim is preserved, the appellate court must then determine whether the record permits resolution of the preserved claim. If the cold record suffices, the appellate court can decide the IAC claim. *See Fair*, 354 N.C. at 166. If resolving the IAC claim requires evidence outside the record, which is frequently the case, the appellate court should dismiss without prejudice for the defendant to file an MAR in the trial court. *See Long*, 354 N.C. at 540. The latter is not a preservation issue, but rather a disposition one. Stated another way, a claim that is apparent from the transcript must be brought even if it may ultimately be dismissed for further investigation.

## C. Defendant's Claims are Procedurally Barred

Having established that IAC claims are not exempt from subsection 15A-1419(a)'s procedural bar merely because such claims are routinely dismissed without prejudice on direct appeal, we turn to defendant's contention that the MAR court and the Court of Appeals erred in concluding his specific IAC claims are procedurally barred because he was in an adequate position to raise them on his direct appeal. Defendant's arguments turn on his assertion that the lower courts erred because neither court determined that his IAC claims "could have been established without the supporting affidavit" from his trial counsel, which was unavailable to him on his direct appeal, and because neither court determined "that the cold trial record was in fact sufficient in this case or point[ed] to anything that would have allowed [defendant] to present his IAC claims adequately on appeal."

To the extent defendant believes that subsection 15A-1419(a)(3) only operates to bar a claim if that claim could have been "established" on direct appeal, i.e., if the defendant would have prevailed on that claim in his or her appeal, he proceeds from a mistaken premise. Subsection 15A-1419(a)(3) bars claims that the defendant "was in a position to *adequately raise*," not perfectly or even persuasively raise, upon a previous appeal. As the State correctly notes, to determine whether an IAC claim is barred we inquire whether a defendant could have made the same claim or claims in his direct appeal, not "whether the defendant [could have] previously raised claims that were worthy of relief."

Here, defendant's MAR consisted of eighty-four pages of background information, twenty-nine pages of argument addressing his five claims, and two exhibits which he incorporated by reference: an affidavit from one of his trial counsel and the pretrial hearing and trial transcripts. Defendant contends his claims are not procedurally barred because they were based on information obtained in, among other things, post-conviction discovery and conflicting affidavits from trial counsel. But as the MAR court correctly noted, counsel's affidavit was not cited by defendant in his MAR apart from two general references contained in the table of contents and a footnote on the first page. The affidavit was not cited or otherwise relied upon by defendant in the eighty-four pages of background information or the twenty-nine pages of argument in support of his claims. By contrast, defendant's MAR cites to the transcript, which was available in his direct appeal record, at least two hundred times.

Defendant's arguments in this appeal regarding the relevancy of the affidavit and its explanation of "trial strategy and impressions" fail to address the fundamental fact that the claims articulated in his MAR rely exclusively on information available from the record. Where, as here, a claim in an MAR relies exclusively on information contained in the direct appeal record, the conclusion that such a claim is "apparent from the record," *see Fair*, 354 N.C. at 167, is almost inescapable.

Because each of defendant's claims asserted in his MAR were readily apparent

from the record on his direct appeal, there is no reason why defendant could not have raised identical claims in his previous appeal. This does not mean that it would have been impossible for defendant to raise *any* IAC claim in his MAR that would have survived the procedural bar. It simply means that "the particular claim[s] at issue," as articulated by defendant in his MAR, "could have been brought on direct review." *See Tucker*, 385 N.C. at 492 (cleaned up).

Defendant further argues that "[i]t is precisely because [these] IAC claims could not be decided on the cold trial record alone without further investigation that [defendant] supported his claims with an affidavit from one of his trial attorneys." But the MAR court's order, in which it alternatively decided each claim on the merits based on the cold record, demonstrates that each of these claims could be determined based on the record alone. That this determination is unfavorable to defendant does not exempt his claims from the procedural bar.

Finally, defendant contends his claims are not subject to the procedural bar because in the absence of counsel's affidavit, the result of such an undeveloped claim in the Court of Appeals would have been dismissal without prejudice to his right to file an MAR in the trial court. But the inquiry is not the potential disposition of such a claim by the Court of Appeals but instead, whether the particular claim could have been adequately raised.

Again, the substance of the claims in defendant's MAR relies on material contained in the record, and it is uncontroverted that defendant failed to raise these

claims on direct appeal. Where, as here, the claims articulated rely entirely on material contained in the direct appeal record, it is abundantly clear that these claims were "apparent from the record." *See Fair*, 354 N.C. at 167.

Accordingly, because defendant was in a position to adequately raise each of these claims in his previous appeal and defendant failed to argue that exceptions to the procedural bar provided by subsection 15A-1419(b) apply, both the MAR court and the Court of Appeals correctly determined that defendant's claims are procedurally barred.

## IV. Conclusion

North Carolina's post-conviction procedure "serves a critical role in our criminal justice system" by providing "potential relief to defendants" and "promot[ing] finality." *Tucker*, 385 N.C. at 486. One of the ways our statutes promote finality is by putting defendants and attorneys on notice that "there is but one chance to raise available matters after the case is over, and if there has been a previous assertion of the error, or opportunity to assert the error, by motion or appeal, a later motion may be denied on that basis." N.C.G.S. § 15A-1415, Official Commentary (2025).

Here, the IAC claims articulated in defendant's MAR were based entirely on information contained in the direct appeal record, and he therefore had the opportunity to assert these claims on direct appeal but failed to do so. Defendant's claims are procedurally barred, and we affirm the judgment of the Court of Appeals.

AFFIRMED.

Justice EARLS dissenting.

Today the Court announces a new rule that the procedural bar in N.C.G.S. § 15A-1419(a)(3) (2025) is actually a preservation requirement. Defense counsel must assert ineffective assistance of counsel (IAC) claims on direct appeal to preserve those for future collateral review. *See* majority *supra* n. 3. The Court does not explain how this preservation requirement is consistent with the text, structure, or legislative intent of North Carolina's post-conviction review statutes. It does not explain why it is justified in overturning this Court's precedent in *State v. Hyman*, 371 N.C. 363 (2018), or modifying the Court's recent decision in *State v. Bell*, 387 N.C. 262 (2025), among others. It does not even explain why it is fair to change the rules in this very case. Defendant Garry Gupton filed his direct appeal under the procedural bar standard as clarified in *Hyman*, but this Court now abandons *Hyman* and retroactively holds Mr. Gupton to a very different standard. The majority purports to apply this Court's precedent while doing anything but. The effect is to unfairly penalize criminal defendants who had no notice of this change and to prematurely close the courthouse doors to even meritorious claims that a conviction has been obtained in violation of constitutional rights. Because I would apply existing precedent to hold that Mr. Gupton's claims are not procedurally barred, I dissent.

## I.   Mr. Gupton's IAC Claims

Mr. Gupton's 118-page motion for appropriate relief (MAR) carefully detailed

the procedural and factual history of his convictions for arson and first-degree murder in support of five claims of IAC. Each claim basically arose from a central premise: trial counsel, he alleged, provided constitutionally ineffective counsel by failing to confront the State's case against him. In essence, he alleged, counsel decided early on that Mr. Gupton had done what the State accused him of, even before seeing the substance of the State's evidence, and concluded that the best defense was insanity. This threshold strategic choice caused defense counsel to fail to meaningfully challenge whether the State's evidence was sufficient to prove its case: counsel failed to thoroughly investigate, introduce affirmative exculpatory evidence, and vigorously subject the State's case to adversarial testing, thereby prejudicing Mr. Gupton.

These allegations were supported by examples in the cold record, including where trial counsel failed to cross-examine the State's witnesses, to move to dismiss charges in light of "gaps" in the State's case, and to challenge or try to keep out prejudicial and inadmissible evidence. They were also supported by specific references to evidence not in the record. For example, his motion alleged:

- Trial counsel did not make efforts to locate, interview, or subpoena any witnesses from the crime scene, the Battleground Inn, who described what had been seen and heard the early morning of 9 November 2014. That was so even as police investigators had spoken with a witness who had seen an unidentified man with a clean-shaven head fleeing the hotel after the fire alarm went off but did not capture the witness's name or information, and

other witnesses heard items being thrown and yelling about the "KKK" at the time of the crimes.

- Trial counsel failed to elicit testimony showing substantial disruptions to the crime scene in between when firefighters arrived and investigators arrived. They failed to challenge the lack of information on ingress and egress into the hotel room or the presence of unexplained items found in the hotel room. Indeed, counsel in closing argument stated that one such item belonged to the victim, Mr. Stephen White, even though no record evidence supported that assertion.

- Counsel did not have Mr. Gupton's blood tested for common date rape drugs including Rohypnol and MDMA, even though Mr. Gupton and Mr. White had met that night drinking at a nightclub and investigators testified that Mr. Gupton appeared to be "diaphoretic" or profusely sweating, a common side effect of such drugs. A third-party had informed trial counsel that "confirmation testing could be performed on Mr. Gupton's blood which would reveal whether Rohypnol (a known date-rape drug) was one of the benzodiazepines which had been detected by the hospital's urine screen and the NMS Labs blood test," yet no such testing was performed.

- Counsel failed to hire or consult with an arson expert or to meaningfully cross-examine the State's arson expert. For example, counsel took no actions to meaningfully challenge that expert's circular reasoning that a

short-circuit did not cause the fire because the fire caused the short-circuit.

- Counsel failed to seek to admit the victim's statements to his doctors when he was in critical condition and likely not to survive that he "recall[ed] checking into a room on the fourth floor of the Battleground Inn, that he had been drinking that night, that he was with a friend he had known for two years, that they did not get into a fight or disagreement, that he did not recall getting hit in the head or the room being on fire, that they went to sleep in the motel room, and that the next thing he remembered was waking up in the hospital."

On top of these specific allegations, the MAR attached and incorporated by reference an affidavit from Mr. Gupton's primary trial counsel, Wayne Baucino. Mr. Baucino corroborated that he "never considered that Mr. Gupton might not have committed these offenses" and "created in [his] mind early on an idea of what had happened in that hotel room, which included a sexual assault triggering a psychotic break leading to Mr. Gupton lighting the bedspread on fire." As a result of that choice, he never interviewed any witnesses from the hotel's fourth floor, did not "hire or consult any fire expert in this case or do anything to challenge the State's fire investigator's findings," determine how the fire was extinguished, or consult a forensic toxicologist. He "assumed NMS [Labs] tested Mr. Gupton's blood for everything." In retrospect, "[he] certainly believe[d] that at the very minimum [he] should have investigated the State's case and put the State more to the test than [he]

did."

The substance of the MAR thus alleged that trial counsel for the guilt-innocence phase prematurely decided to defend Mr. Gupton on the basis of insanity, even before counsel received the State's discovery and realized how little evidence the State had of who was in the hotel room, what happened in the hotel room, or how the fire started—and even as Mr. Gupton's own recollection of what happened was inconsistent with physical evidence at the crime scene and varied over time. Mr. Gupton's IAC claims particularly challenged that trial counsel wrongly focused on a legally invalid insanity defense at the expense of challenging the State's case, made highly questionable admissions of guilt and admitted irrelevant and prejudicial evidence, and focused on the capital sentencing portion of the proceedings at the expense of trying to prove Mr. Gupton's innocence. These allegations drew from the record as well as evidence not admitted at trial but contained in trial counsel's files and trial counsel's own reflections as to defense strategy. Mr. Gupton's MAR was accompanied by a second motion for post-conviction discovery, for state funding to hire a psychiatrist and fire expert, and to test any remaining samples of Mr. Gupton's blood for certain drug substances. Mr. Gupton's first motion for post-conviction discovery had been denied because he had not yet filed an MAR.

## II.    The Procedural Bar Standard

The narrow question presented is whether Mr. Gupton's IAC claims are procedurally barred because "[u]pon a previous appeal the defendant was in a

position to adequately raise the ground or issue underlying the present motion but did not do so." *See* N.C.G.S. § 15A-1419(a)(3) (2025).

The particular contours of this procedural bar have not been a model of clarity. Indeed, more than twenty-five years ago, a judge on the United States Court of Appeals for the Fourth Circuit, hearing a petition for habeas corpus from another defendant, Ernest McCarver, whose claims were subject to this procedural bar, remarked that "North Carolina courts have not undertaken to construe this statutory language so as to provide the needed clarity" for when IAC claims must be raised on direct appeal. *McCarver v. Lee*, 221 F.3d 583, 599 (4th Cir. 2000) (Motz, J., concurring in the judgment). Although the "general practice in North Carolina [is to] hear[ ] ineffective assistance claims at the post-conviction stage," there were undefined exceptions that created confusion. *See id.* The opinion noted,

> Is a defendant "in a position to adequately raise" a claim whenever there are facts in the record to support it, or only when the facts as to the claim are undisputed? Must the representation that was assertedly ineffective have taken place prior to trial or prior to sentencing? Is a defendant "in a position to adequately raise" an ineffective assistance claim on direct appeal when the defendant is being represented on the appeal by his assertedly ineffective trial counsel? We simply do not know, because the scope of the exception, as well as the scope of the procedural rule that purportedly derives from it, have never been addressed by the North Carolina courts.

*Id.* Judge Motz concurred in the judgment only because even as she could not discern any consistency in North Carolina's application of the procedural bar to IAC claims, she concluded that Mr. McCarver was not prejudiced by the alleged IAC. *Id.* at 598.

The *McCarver* majority agreed that in North Carolina "the accepted practice is to raise claims of [IAC] in post-conviction proceedings, rather than direct appeal, due to the need for evidentiary development of these claims," and that this general rule is subject to "exceptions." *Id.* at 590 (majority opinion) (cleaned up) (quoting *Smith v. Dixon*, 14 F.3d 956, 969 (4th Cir. 1994)). Whatever the precise contours of those exceptions, however, Mr. McCarver's claims seemed to fit them: he alleged his counsel was constitutionally ineffective for letting a jury learn about a specific piece of evidence—a claim which was entirely focused on the "the evidence that was available instead of the evidence that could have been generated." *Id.* at 592. Thus "it is plain that McCarver could have made the very [IAC] claim on direct review that he does today—and just as effectively." *Id.*

Following this decision from the Fourth Circuit, our Court endeavored to provide further guidance on the meaning of this MAR procedural bar, specifically the scope of exceptions to the general practice that IAC claims are appropriately brought post-conviction. Soon after, in *State v. Fair*, 354 N.C. 131 (2001), we rejected the argument that, as a category, all IAC claims must be raised post-conviction. *Id.* at 166. It was appropriate, we reasoned, to bring and resolve IAC claims on direct appeal when the "cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *Id.* As examples, we noted that a challenge that counsel failed to object may be appropriately resolved on direct

appeal, *see id.* (citing *State v. Blakeney*, 352 N.C. 287, 308–09 (2000)), where a challenge that counsel improperly admitted defendant's guilt without his consent was "appropriately deferred for consideration" post-conviction, *id.* (citing *State v. House*, 340 N.C. 187, 196–97 (1995)). This Court then elected to reach the merits of Mr. Fair's IAC challenges on direct appeal—most of which arose from on-the-record acts or omissions of counsel letting in certain evidence. We reviewed his IAC claims that Mr. Fair's lawyer wrongly elicited damning testimony on direct examination, failed to object on cross-examination to information subject to attorney-client privilege, failed to object during the State's closing argument, failed to object to Mr. Fair's impeachment regarding his post-arrest silence, and wrongly requested statutory mitigating factors as non-statutory mitigating factors. *Id.* at 167–68.

In *State v. Long*, 354 N.C. 534 (2001), we reiterated that *Fair* sought to resolve the issues identified in *McCarver*. *Id.* at 539–40. IAC claims should be raised on direct appeal, we explained, when "claims . . . may be *developed and argued* without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *Id.* (emphasis added) (quoting *Fair*, 354 N.C. at 166). "[G]iven the nature of IAC claims, 'defendants likely will not be in a position to adequately develop many IAC claims on direct appeal.' " *Id.* at 540 (quoting *Fair*, 354 N.C. at 167). Accordingly, we concluded that Mr. Long's IAC claim arising from defense counsel's preparation and preservation of the voluntary intoxication defense based on Long's consumption of alcohol was properly raised post-conviction because "evidentiary issues *may* need to

be developed before [the] defendant will be in a position to adequately raise his possible IAC claim." *Id.* (emphasis added). Put another way, we interpreted the statute to mean that a defendant could have "adequately raise[d] the ground or issue underlying the [IAC claim]" "upon a previous appeal," *see* N.C.G.S. § 15A-1419(a)(3), only when the claim could be "developed and argued" without evidence ancillary to the record. *Long*, 354 N.C. at 540 (cleaned up). Where evidentiary issues "may need to be developed," "a defendant will not be required to [raise an IAC claim on direct appeal]." *Id.* There, the defendant could not adequately the raise the issue of "trial counsels' preparation and preservation of the intoxication [defense]" on the cold record and that IAC claim thus should have been raised post-conviction. *Id.* at 539–40.

Accordingly, in the years that followed, we routinely dismissed IAC claims brought on direct appeal where a defendant would benefit from evidentiary or ancillary hearings to develop his claims, including because they involved the reasonableness of particular strategic choices by trial counsel. In *State v. Watts*, 357 N.C. 366 (2003), we dismissed an IAC claim based on counsel's failure to present any mitigating evidence during the sentencing phase raised on direct appeal because those claims required an evidentiary hearing to understand what mitigating evidence counsel had at that time and/or what additional evidence could have been obtained. *Id.* at 378. In *State v. Campbell*, 359 N.C. 644 (2005), we dismissed IAC claims on direct appeal arising from counsel's choice to argue self-defense and intoxication

because "we cannot ascertain from the record the reason for defense counsel's strategy, [so] these issues require further evidentiary development." *Id.* at 693. We distinguished the other IAC challenges in the same appeal arising from counsel's failure to object or from statements made by the State during closing arguments. *Id.* at 691–94. Those claims did not require considerations of strategy or evidence outside of the record and thus were appropriate to resolve on direct appeal. *Id.* at 694; *see also State v. McNeill*, 360 N.C. 231, 251–52 (2006) (dismissing on direct appeal IAC claim based on counsel's failure to ask for stipulation as to defendant's church service re: non-statutory mitigating factors, without reviewing the merits of that argument, and directing that this claim may be brought post-conviction).

Likewise, on review of IAC challenges brought post-conviction, we repeatedly held that claims involving the reasonableness of counsel's strategic decisions were not procedurally barred if not first brought on direct appeal when they required factual development. For example, in *State v. Hyman*, 371 N.C. 363 (2018), the defendant claimed IAC because his attorney failed to withdraw as his counsel and serve as a witness for the defense to testify to an exculpatory conversation she had with a key State's witness. *Id.* at 381–82. We held that claim was not procedurally barred because

> [t]he record developed at trial did not contain any information affirmatively tending to show that the alleged conversation between [the defendant's trial counsel] and [a key State's witness] actually occurred or whether [the defendant's trial counsel] had a strategic or tactical reason for failing to withdraw from her representation of

defendant.

*Id.* at 384. The record did contain some information about this particular claim which was later relied on in the MAR—specifically the defendant's trial counsel's cross-examination of the State's witness about the alleged conversation and trial counsel's attempt to use a key piece of evidence on cross-examination of that witness. *Id.* at 385. Nonetheless, we held the claim was not procedurally barred. *Id.* We reasoned that "the extent to which [counsel's] acts or omissions had such a strategic or tactical motivation was a relevant issue about which the trial record is completely silent." *Id.* Moreover, the affirmative evidence the defendant would need to make out his IAC claim—such as the nature of trial counsel's possible testimony had she been a witness—did not exist in the record. *Id.* at 384–85. Simply put, the "defendant had no hope of making a viable showing . . . based upon the evidentiary record developed at trial." *Id.* at 384. Defendant was thus not "in a position to adequately raise the [IAC] claim asserted in his [MAR] on direct appeal." *Id.* at 383.

Similarly, in *State v. Todd*, 369 N.C. 707 (2017), we observed that counsel's reasonableness—or lack thereof—in failing to make certain arguments on direct appeal was a question of "whether . . . counsel made a strategic decision not to raise [that argument]," and if "such a decision was strategic," whether "that decision was a reasonable decision." *Id.* at 711–12. Where the record was "insufficient" to make those determinations, the IAC claim was properly resolved after an opportunity for factual development on remand. *Id.* at 712.

Since *Fair*, we have also cautioned that *Strickland*'s prejudice prong cannot operate to deny or procedurally bar IAC claims before defendants have a chance to show how counsel's allegedly deficient performance impacted the trial. *See Strickland v. Washington*, 466 U.S. 668, 693 (1984). "[I]t is not always possible to resolve a defendant's prejudice claim by looking to a cold record that was itself shaped by counsel's allegedly deficient performance." *State v. Oglesby*, 382 N.C. 235, 245 (2022). It would be "inconsistent with the right the Sixth Amendment protects" to "deny[ ] a defendant's IAC claim on direct appeal on the grounds that he cannot show prejudice based on a suspect record," *id.*, when the particular proceeding is itself "unreliable because of a breakdown in the adversarial process that our system counts on to produce just results," *id.* (quoting *Strickland*, 466 U.S. at 696). It follows that an appellate court's "confidence in the record produced during the underlying proceeding" and "the nature of the deficient performance an attorney allegedly rendered may be relevant in deciding whether it is appropriate to dispose of an IAC claim on direct appeal on prejudice grounds alone." *Id.* It may be improper to resolve an IAC claim on direct appeal on prejudice grounds where

> a defendant alleges that counsel performed deficiently in a manner that could plausibly undermine the validity of the adversarial proceeding as a mechanism for ascertaining facts—for example, by a failure to call witnesses who would have contributed to the evidentiary record or by a failure to raise a legal argument that deprived the defendant of an opportunity to introduce supporting evidence[.]

*Id.* at 245–46; *see also United States v. Cronic*, 466 U.S. 648, 655–56 (1984) (noting

that the "very premise that underlies and gives meaning to the Sixth Amendment" is that, in "our adversary system of criminal justice[,] . . . partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free" (cleaned up)).

In *Oglesby*, we denied an IAC claim brought via MAR on prejudice grounds and without an evidentiary hearing where the defendant alleged counsel was ineffective for failing to ask the trial court at his resentencing hearing to consider running all his sentences concurrently. 382 N.C. at 243. That claim did not strike at our confidence in the underlying proceedings, and the record specifically failed to support that Mr. Oglesby was prejudiced by this discrete omission of counsel. *See id.* at 248 ("[T]he resentencing court was not deprived of any evidence or argument that could have influenced its [sentencing] decision . . . ."). Namely the trial court rejected a related legal argument at that same hearing: for Mr. Oglesby to show prejudice, we noted, "[w]e would have to conclude it was a reasonable probability that while choosing not to shorten his sentence by two and a half to three and a half years, the trial court nevertheless would have chosen to shorten his sentence by at least eight to ten years" solely if asked to do so by defense counsel. *Id.* at 247. "This counterintuitive assertion is insufficient to demonstrate prejudice." *Id.*

The standard that emerged over decades of precedent thus somewhat clarified the doctrinal uncertainty identified in *McCarver*. We focused the procedural-bar inquiry on the information that would have been available to the defendant during

the direct appeal and on what additional information, if any, defendant would need to develop and argue the particular IAC claim and a reviewing court would need to resolve the same: "[I]n order to be subject to the procedural default specified in N.C.G.S. § 15A-1419(a)(3), the direct appeal record must have contained sufficient information to permit the reviewing court to make *all* the factual and legal determinations necessary to allow a proper resolution of the claim in question." *Hyman*, 371 N.C. at 383 (emphasis added); *Bell*, 387 N.C. at 275 (same). After all, "the 'reasonableness' of counsel's performance at trial is a fact-intensive inquiry," *State v. Gillard*, 386 N.C. 797, 867 (2024) (quoting *Oglesby*, 382 N.C. at 243), so those types of claims may usually require "such ancillary procedures as the appointment of investigators or an evidentiary hearing," *id.* (quoting *Fair*, 354 N.C. at 166–67).

Applying our precedent, Mr. Gupton's claims are not procedurally barred. He was not in a position to adequately raise them on direct appeal because the record at that point did not "contain[ ] sufficient information to permit the reviewing court to make all the factual and legal determinations necessary to allow a proper resolution of [his] claim[s]." *See Hyman*, 371 N.C. at 383. Mr. Gupton alleged that his counsel made an unreasonable strategic choice to focus on a dubious insanity defense at the expense of challenging the State's case, relying in part on evidence not in the "cold record," *see Fair*, 354 N.C. at 166, but contained in an ancillary affidavit from trial counsel and other material from trial counsels' files, *see Todd*, 369 N.C. at 712 (remanding for an evidentiary hearing where "the record before this Court is not

thoroughly developed regarding [the] defendant's appellate counsel's reasonableness, or lack thereof, in choosing not to" make particular arguments); *accord Campbell*, 359 N.C. at 693 (noting that reasonableness of counsel's choice to advance specific defenses required evidentiary hearings and thus could not be resolved on direct appeal); *Long*, 354 N.C. at 539 (same with trial counsel's preparation and preservation of a voluntary intoxication defense). Nowhere in the cold record did counsel plainly state the extent to which they failed to investigate. *Cf. Bell*, 387 N.C. at 274 (concluding that a *J.E.B.* claim was procedurally barred where the State made "multiple statements" in "open court" that "indicated the State's gender-based motives for striking potential jurors"). Mr. Gupton's IAC claims relied not just on "evidence that was available" in the record but also on "evidence that could have been generated," specifically related to other suspects, causes of the fire, and defenses like involuntary intoxication. *See McCarver*, 221 F.3d at 592. He could not "just as effectively" have made his IAC claim on direct appeal. *See id.*

Mr. Gupton's MAR quite clearly raised extra-record factual disputes and fair doubts about the reasonableness of Mr. Gupton's counsels' performance. For example, the State's own answer to Mr. Gupton's MAR contained an affidavit from Mr. Gupton's other trial counsel, Ames Chamberlin, who confirmed he had serious concerns that "the jury would reject [Mr. Gupton's] insanity defense" but that there seemed to be no "better alternative" specifically because there was "no credible evidence to support a theory that a third party had killed" the victim. He reiterated

that the decision to pursue the insanity defense was made before Mr. Chamberlin was appointed. According to him, he and his co-defense counsel subsequently failed to present affirmative evidence of Mr. White's statements or consult an independent arson expert because the State's story of what happened comported with the narrative they had already built around that defense.

Questions of what was reasonable under the circumstances known to counsel at the time and what could have been developed through sufficient additional factual investigation is the very heart of a fact-intensive *Strickland* claim. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Here, that claim hangs on evidence not in the cold record from the direct appeal. Mr. Gupton's allegations that trial counsel unreasonably and broadly failed to challenge the State's evidence—an assertion trial counsel affidavits largely corroborate—calls into question "confidence in the record produced during the underlying proceeding" and makes this particular claim inappropriate to be resolved on the prejudice prong on direct appeal. *See Oglesby*, 382 N.C. at 245.

Had Mr. Gupton brought identical claims on direct appeal, featuring the same allegations and ample reliance on ancillary materials in trial counsel's files, a reviewing court most certainly would have determined that the record itself did not

"contain[ ] sufficient information to . . . make all the factual and legal determinations necessary to allow a proper resolution of the claim in question." *See Hyman*, 371 N.C. at 383. There would have been no "affirmative evidence" of defendant's claims. *See id.* at 385. He would not have been in a position to "develop[ ] and argue[ ]" his claims. *See Long*, 354 N.C. at 540. The court would have concluded that "trial counsels' preparation . . . of the [insanity defense]" involves extra-record "evidentiary issues." *See id.* at 539–40. The claims would have been dismissed. They are not procedurally barred for the same reason. *See Hyman*, 371 N.C. at 383 ("[I]n order to be subject to the procedural default specified in N.C.G.S. § 15A-1419(a)(3), the direct appeal record must have contained sufficient information to permit the reviewing court to make all the factual and legal determinations necessary to allow a proper resolution of the claim in question."); *accord Bell*, 387 N.C. at 274–75 ("*For this Court to determine that a claim could have been brought on direct review*, the direct appeal record must have contained *sufficient information to permit the reviewing court to make all the factual and legal determinations necessary* to allow a proper resolution of the claim in question." (emphases added) (cleaned up)).

### III.    The Majority's New Standard

Instead of applying the established legal standard to the facts of this appeal, the majority radically breaks from our precedent, adopts a uselessly vague standard that requires formalistic and perfunctory preservations of rights on direct appeal to skirt a procedural bar, and largely ignores the substance of Mr. Gupton's allegations.

Start with how the majority describes the substance of Mr. Gupton's allegations. The majority briefly mentions the topline summary of Mr. Gupton's claims when reciting the factual and procedural background. *See* majority *supra* Part I. But when applying the legal standard to those claims, the majority ignores their substance. *See* majority *supra* Section III.C. Instead, the majority relies on the form of the MAR, including route tallies of the number of times the record is cited, the number of citations to the attached affidavit (notwithstanding that the opinion concedes the affidavit was incorporated by reference into the MAR), and the number of pages of background information and argument. These formalistic observations show, the majority contends, that the IAC claims "rely exclusively on information available from the record." *See* majority *supra* Section III.C.

It is unpersuasive as a matter of logic to so blatantly conflate matters of form with those of substance. It is also inconsistent with decades of precedent where this Court has modeled that the appropriate way to evaluate the procedural bar for an IAC claim is to look particularly at the substance of the claim being alleged and then ask whether the discrete acts or omissions of counsel that are being challenged prejudiced defendant. *E.g.*, *Bell*, 387 N.C. at 274; *Oglesby*, 382 N.C. at 245; *Fair*, 354 N.C. at 167–68.

As further evidence for the majority's conclusion that Mr. Gupton's claims could have been raised on direct appeal, the majority points out that the trial court relied on the cold record alone when denying each of Mr. Gupton's claims on the

merits. *See* majority *supra* Section III.C. For one thing, it hardly demonstrates meaningful appellate review to gesture vaguely to the very order on appeal as grounds for procedurally barring Mr. Gupton's right to even bring his claims. And ironically, doing so here exactly demonstrates that the trial court and the majority improperly barred Mr. Gupton's claims on prejudice grounds, looking solely at the cold record, before engaging with the substance of what Mr. Gupton actually alleged—that the record itself was a product of counsel's deficient performance and the potential evidence for his claims lay beyond the record.

The majority's reasoning on this point is circular. If the thrust of a defendant's IAC claim is that his defense lawyer made strategic choices that led the State's evidence to be accepted wholesale and not meaningfully challenged through the adversarial process, a reviewing court cannot just point to a record of those very same proceedings and conclude that the defendant would have been convicted anyway—or that an appellate court could possibly have so concluded if reviewing the claims on direct appeal. No right to effective counsel is being vindicated under those circumstances. This is plainly "inconsistent with the right the Sixth Amendment protects." *Oglesby*, 382 N.C. at 245.

Having reduced the substance of Mr. Gupton's IAC claims to general observations about the form of his MAR and the trial court's description of it, the majority proceeds to adopt a new standard for when an IAC claim is procedurally barred under N.C.G.S. § 15A-1419(a)(3): the procedural bar applies to those claims

"that are apparent from the record," quoting a single sentence from *Fair*. *See* majority *supra* Section III.A. This standard is not the operative one from *Fair*. As discussed above, *Fair* focused on whether ancillary proceedings were needed to facilitate evidence of the IAC claim in question. 354 N.C. at 166. Claims need not be brought on direct review where "such ancillary procedures" are needed to "develop[ ] and argue[ ]" the claim. *Id.*

It is also not the standard sharpened by this Court over the two intervening decades. *Hyman* and *Bell* focused the procedural bar inquiry on whether the Court of Appeals could have fairly disposed of the claims—whether "the direct appeal record . . . contained sufficient information to permit the reviewing court to make all the factual and legal determinations necessary to allow a proper resolution of the claim in question." *Hyman*, 371 N.C. at 383; *see also Bell*, 387 N.C. at 275.

The majority admits this. It stresses in a footnote that "apparent from the record" is different from a reviewing court's "ability to decide an IAC claim." *See* majority *supra* n.3. But *Hyman* and *Bell* and cases preceding it explicitly adopted the latter standard for what claims must be raised on direct appeal or else be procedurally barred. The majority should really explain why it is refusing to apply our precedent and thereby implicitly overturning at least half a dozen decisions of this Court.

It bears emphasizing that the majority's new standard is unworkable. The majority's standard asks whether "material contained in the record" made the claim "apparent." *See* majority *supra* Section III.C. What does this mean? Is a claim

"apparent from the record" when there are any facts in the record to support it? If it is "apparent from the record" that trial counsel had *a* strategy, do all claims involving the reasonableness of that strategy also qualify? If trial counsel stays on as appellate counsel and must attack their own performance using their own record and trial files, is that also "apparent from the record"? The majority reverts our doctrine back to the uselessly vague standards in place under *McCarver*. The only thing "apparent" here is that the majority's rule raises more questions than it answers.

Importantly, too, IAC claims by definition allege constitutionally deficient counsel at a prior proceeding. *Strickland*, 466 U.S. at 687. At a high enough level of generality, then, every IAC claim contesting counsel's prior performance could effectively be "apparent from the record" and thus must be brought on direct appeal to avoid becoming procedurally barred. That is exactly the type of categorial preservation rule our Court has long disavowed. *See Fair*, 354 N.C. at 165 ("[Section] 15A-1419 is not a general rule that any claim not brought on direct appeal is forfeited on state collateral review. Instead, the rule requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review." (quoting *McCarver*, 221 F.3d at 589)). The majority offers no guidance for which IAC claims will be "apparent from the record" and which will not, further suggesting that it intends all IAC claims to be barred unless first raised on direct appeal.

The majority thus recasts the procedural bar as a formalistic preservation

requirement—IAC claims may only be brought on collateral review if on direct appeal the defendant reserved his right to bring a future IAC claim on collateral review. Again, that is not how this Court has interpreted the statute for decades.[1]

This interpretation is also inconsistent with the statutory text. The majority states that being in a position to "adequately" raise a claim does not mean

---

[1] The majority cites *Schooldev East, LLC v. Town of Wake Forest*, 386 N.C. 775, 785 (2024), for the proposition that our Court reviews an MAR in the first instance for any errors of law. *See* majority *supra* Part II. This statement is quite odd. *Schooldev* involved an unusual appellate review posture where a superior court was sitting as an appellate court to review evidence presented to a local government in a quasi-judicial proceeding or for errors of law in the local government's decision in that proceeding. *Id.* at 784–85. In turn, the reviewing courts also sat as appellate courts. *Id.*

The context here is different. For appellate review of a trial court's decision to apply a procedural bar to a noncapital MAR, we review the Court of Appeals' decision for errors of law. *State v. Hyman*, 371 N.C. 363, 382–85 (2018); *State v. Bell*, 387 N.C. 262, 274–78 (2025). We do not typically review these cases at all, however, because the Court of Appeals is supposed to have final say in appeals of noncapital MARs. *See* N.C.G.S. § 15A-1422(f) (2025).

A consequence of relying on *Schooldev* is that the majority avoids directly reviewing the Court of Appeals' decision. Notably, that decision wildly misapplied *Bell* and our other precedents by concluding that Mr. Gupton's MAR was procedurally barred because "had he exercised reasonable diligence" he could have obtained the same affidavits from his trial counsel during the direct appeal and thus brought his claims then. *State v. Gupton*, No. COA23-661, slip op. at 12–13 (N.C. Ct. App. July 16, 2025) (unpublished), available at appellate.nccourts.org/opinions/?c=2&pdf=43596. The majority's choice to ignore the Court of Appeals' reasoning here invites even further confusion over the operative legal standard. It is also not difficult to see how our current judiciary is misapplying procedural rules in a manner that fails to protect the underlying Sixth Amendment right.

Side-stepping the Court of Appeals' decision here is also notable because the majority otherwise takes pains to chastise that court for failing to apply *Cryan v. National Council of YMCAs*, 384 N.C. 569 (2023), when it allowed Mr. Gupton's appeal via writ of certiorari. The majority does not explain, however, why our Court's own decision to allow his petition for writ of certiorari to review the Court of Appeals' decision comports with *Cryan*—that there are extraordinary circumstances and likely error below. *Id.* at 572–73. The majority instructs the intermediate appellate court to "do as we say, not as we do," it seems. We can only speculate that the extraordinary circumstance here is the majority's interest in taking a hatchet to "a principle of law [that] has become settled by a series of decisions." *See State v. Ballance*, 229 N.C. 764, 767 (1949).

"persuasively," or even whether the claim would be "worthy of relief." *See* majority *supra* Section III.C. But rewriting the statutory term "adequately raise" to mean something less than "worthy of relief" is inconsistent with the ordinary meaning of those words. *See Adequate, Webster's Third New International Dictionary* 25 (2002) (defining adequate as "fully sufficient for a specified or implied requirement," or "narrowly or barely sufficient," or "legally sufficient"). A party cannot "adequately raise" a claim they are in inadequate position to develop and argue. Moreover, lawyers are not permitted under our professional rules to advance frivolous legal arguments. N.C. R. Pro. Conduct r. 3.1 (N.C. State Bar 2003). The legislature knows this and surely would not put defense counsel in a position of trying to raise and preserve an IAC claim the lawyer does not know to be meritorious. *See C Invs. 2, LLC v. Auger*, 383 N.C. 1, 13 (2022) ("The Legislature is presumed to know the existing law and to legislate with reference to it." (quoting *State v. S. Ry. Co.*, 145 N.C. 495, 542 (1907))).

The majority effectively supplants the default practice that most IAC claims must be brought on collateral review and only narrow exceptions may be addressed on direct appeal, with the inverse: all IAC claims must be brought on direct appeal to be preserved for collateral review or determined on the merits. The majority's opinion is thus an open invitation for courts to decide IAC claims on the prejudice prong on direct appeal, denying defendants a chance to build an evidentiary record to support their good-faith claims. This puts defendants in a catch-22: they must raise IAC

claims on direct appeal before having evidence to prove deficient performance sufficient to overcome *Strickland*'s presumption of reasonableness and risk a ruling on the merits based on their inability to show prejudice, or wait to file an MAR with sufficient extra-record evidence and likely face a procedural bar in any event. This system cannot meaningfully protect the underlying Sixth Amendment right to effective assistance of counsel. It is a catch-22 that eliminates Sixth Amendment rights.

Not only does the majority offer no good reason for implicitly overturning our established precedent, but the "bait-and-switch" here works a significant injustice to criminal defendants who have relied on that precedent. North Carolina's appellate courts have for decades underscored that the general practice is to bring IAC claims post-conviction, subject to only narrow exceptions, and that the relevant inquiry is the reviewing court's ability to decide the claim. We need look no further than the defendant in this very case to see the injustice: Mr. Gupton filed his appellant's brief at the Court of Appeals in his direct appeal on 10 December 2018, right after this Court clarified the procedural bar standard in *Hyman* on 17 August 2018. Yet the majority now rejects *Hyman* and retroactively holds Mr. Gupton to a very different standard. This is not fair.

The legislature intentionally designed a system of post-conviction review for the purpose of marshalling ancillary evidence. Through these procedures, a defendant is entitled to post-conviction discovery and mechanisms to facilitate such

fact-finding. *See* N.C.G.S. § 15A-1415(f) (2025). Unlike on direct appeal, counsel in an MAR proceeding may obtain trial counsel's files, obtain post-conviction discovery, interview counsel, and conduct further investigation and interviews beyond the cold appellate record. The majority's formalistic preservation requirement is inconsistent with the text of the statute as well as the purposes of post-conviction review articulated by the legislature to ensure that convictions are not obtained "in violation of the Constitution of the United States or the Constitution of North Carolina." *See* N.C.G.S. § 15A-1415(b)(3) (2025).

Ultimately it is our Court's responsibility to articulate and consistently apply clear, fair standards for when and how defendants can make good faith claims of IAC as is their right under the Sixth Amendment. Because the majority's opinion abandons that responsibility and welcomes profound unfairness and further confusion into this part of our criminal justice system, I dissent.

Justice RIGGS joins in this dissenting opinion.